Mary Ann JENNINGS, Appellant,

v.

The BOARD OF CURATORS OF MISSOURI STATE UNIVERSITY, Respondent.

No. SD 31900.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 27, 2012.

Rehearing Denied Sept. 18, 2012.

---

George Swearingen Smith, Columbia, for Appellant.

Ian P. Cooper, St. Louis, for Respondent.

DANIEL E. SCOTT, P.J.

Mary Ann Jennings ("Plaintiff"), a tenured faculty member at Missouri State University ("MSU"), initially sued MSU for age discrimination and retaliation ("Jennings I"). She later sought leave to file an amended petition adding two more counts for (1) breach of implied covenant of good faith and fair dealing, and (2) a declaratory judgment and other relief per Missouri's Administrative Procedure Act ("MAPA").[1] The trial court denied Plaintiff's request.

With Jennings I still pending, Plaintiff filed her new claims as a separate two-count action in the same court ("Jennings II"). MSU moved to dismiss Jennings II for failure to state a claim (Rule 55.27(a)(6)) and because "another action pend[s] between the same parties for the same cause in this state" (Rule 55.27(a)(9)). The trial court granted MSU's motion.

Plaintiff appeals the dismissal of Jennings II. Our review is *de novo*. *Vogt v. Emmons*, 158 S.W.3d 243, 247 (Mo.App. 2005). As the trial court did not state the reason for its ruling, we will affirm if dismissal was proper on any ground stated in MSU's motion. *Fleddermann v. Camden Cty., Missouri Bd. of Adj.*, 294 S.W.3d 121, 124 (Mo.App.2009).

### Rule 55.27(a)(6)—General Principles

A Rule 55.27(a)(6) motion solely tests a petition's adequacy. *Id.* We deem

---

1. Unless otherwise indicated, statutory citations are to RSMo 2000 and rule references are to Missouri Court Rules (2011).

factual allegations true and review the petition almost academically to determine if the alleged facts state a recognizable action. *See Avila v. Community Bank of Virginia*, 143 S.W.3d 1, 4 (Mo.App.2003).

■ Nonetheless, "motions to dismiss for failure to state a claim have substantially more 'bite' under our 'fact pleading' rules than they have under the federal system of 'notice pleading.'" *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 379 (Mo. banc 1993). Our rules "demand more than mere conclusions that the pleader alleges without supporting facts." *Pulitzer Pub. v. Transit Cas. Co.*, 43 S.W.3d 293, 302 (Mo. banc 2001); *see also Solberg v. Graven*, 174 S.W.3d 695, 699 (Mo.App.2005). We disregard such conclusions in determining whether a petition states a claim. *Solberg*, 174 S.W.3d at 699.

### Count I—Good Faith and Fair Dealing

Citing Missouri case law, the Eighth Circuit has noted that:

> The law does not allow the implied covenant of good faith and fair dealing to be an everflowing cornucopia of wished-for legal duties; indeed, the covenant cannot give rise to new obligations not otherwise contained in a contract's express terms. *Glass v. Mancuso*, 444 S.W.2d 467, 478 (Mo.1969). The implied covenant simply prohibits one party from "depriv[ing] the other party of its expected benefits under the contract."

*Morton v. Hearst Corp.*, 779 S.W.2d 268, 273 (Mo.Ct.App.1989) (citing *Martin v. Prier Brass Mfg. Co.*, 710 S.W.2d 466, 473 (Mo.Ct.App.1986))....

*Comprehensive Care Corp. v. RehabCare Corp.*, 98 F.3d 1063, 1066 (8th Cir.1996).

■ That said, it appears that a written employment contract for a definite term implies a covenant of good faith and fair dealing which is breached if an employer, in bad faith, exercises its contractual right to unilateral action in order to deprive the employee of expected contract benefits. *See Morton v. Hearst Corp.*, 779 S.W.2d 268, 273 (Mo.App.1989). As developed by later (non-employment) cases, this implied duty is to not "us[e] express contract terms in such a way as to evade the spirit of the transaction or to deny a party an expected contract benefit." *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 412 (Mo.App.2000); *see also Missouri Consolidated Health Care Plan v. Community Health Plan*, 81 S.W.3d 34, 46 (Mo.App. 2002).

Given these cases and our fact-pleading rules, Plaintiff had to plead *more than mere conclusions without supporting facts* (*Pulitzer*, 43 S.W.3d at 302), showing that MSU used *express contract terms* in bad faith to deny Plaintiff an expected contract benefit or evade the spirit of the transaction.

■ Count I does not meet this standard.[2] In conclusory fashion, Plaintiff twice charges MSU with "not complying

---

**2.** After incorporating prior allegations as to venue and the parties, including that "Plaintiff was offered and accepted employment as associate professor of social work with tenure," Count I reads as follows:

11. As a result of the employer-employee relationship between Plaintiff and Defendant MSU, the terms of Plaintiff [sic] employment contract with Defendant MSU's *Faculty Handbook* and the Faculty grievance process, the expressed and implied promises made in connection with said *Faculty Handbook* and the Faculty grievance process and decisions, and the acts conduct and communications resulting in said promises, Defendant MSU promised to act in good faith toward and deal fairly with Plaintiff which requires, among other things, that:

a. Each party act in good faith toward the other concerning all matters associated with the *Faculty Handbook* and the decisions in Plaintiff's grievance. Specifically,

with the *Faculty Handbook* concerning Plaintiff's reassignment and the Faculty grievance process." With no greater specificity, she complains that "MSU's reassignment and the decisions in Plaintiff's grievance, taken in violation of the *Faculty Handbook* and under the terms of Plaintiff's contract, was wrongful, in bad faith, and in violation of its duties." Such conclusions, however, are offered without supporting facts. What was the "reassignment"? What was "Plaintiff's grievance"? What were "the decisions in Plaintiff's grievance"? How was "the Faculty grievance process" allegedly amiss? How was any of the foregoing allegedly "in violation of the *Faculty Handbook*" or "the terms of Plaintiff's contract" or otherwise "wrongful, in bad faith, and in violation of [MSU's] duties" (and indeed, what "duties")?

> Defendant MSU failed to act in good faith by not complying with the *Faculty Handbook* concerning Plaintiff's reassignment and the Faculty grievance process;
>
> b. Each party act in fairness toward the other concerning all matters associated with the *Faculty Handbook* and the decisions in Plaintiff's grievance. Specifically, Defendant MSU failed to act in fairness by not complying with the *Faculty Handbook* concerning Plaintiff's reassignment and the Faculty grievance process;
>
> c. Each party would comply with its representations and promises concerning all matters associated with the *Faculty Handbook* and the decisions in Plaintiff's grievance; and
>
> d. Defendant MSU would give Plaintiff's interests the same consideration it gives its own.
>
> 12. Defendant MSU's reassignment and the decisions in Plaintiff's grievance, taken in violation of the *Faculty Handbook* and under the terms of Plaintiff's contract, was wrongful, in bad faith, and in violation of its duties.
>
> 13. Defendant MSU's breach of the covenant of good faith and fair dealing caused Plaintiff to suffer damages and injury.
>
> 14. As a direct result and proximate cause of Defendant MSU's breach of the

Perhaps most importantly, Count I wholly fails to allege, as it must per *Missouri Consolidated* and *Koger, express contract terms* that MSU supposedly misused in bad faith. Bare mention of "the *Faculty Handbook*," or "the terms of Plaintiff's contract," or MSU's "duties" does not meet Missouri fact pleading standards or identify *express contract terms* that might support the Count I claim.[3]

Our supreme court has firmly stated that "Missouri is not a 'notice pleading' state." *ITT*, 854 S.W.2d at 379. That Count I may give MSU "'fair notice of what the plaintiff's claim is and the grounds upon which it rests'" is not good enough. *Id.* (quoting and distinguishing federal pleading standard as expressed in *Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).[4] Count I fails to state a claim under Rule 55–05(1).

> covenant of good faith and fair dealing, Plaintiff suffered emotional, professional and reputational harm, and loss of future wages and actual costs in an amount yet to be determined, but in excess of three hundred thousand dollars ($300,000.00).
>
> WHEREFORE, Plaintiff prays for judgment against Defendant MSU for an amount which includes Plaintiff's actual costs and lost future wages, loss of professional reputation harm, and such other and further relief as the Court deems just and proper.

3. Plaintiff is not helped by her failure to provide this court with a copy of the oft-mentioned Faculty Handbook or of any alleged employment contract or documentation.

4. A natural consequence of mere notice pleading, beyond rendering motions to dismiss ineffectual (*ITT*, 854 S.W.2d at 379), is a need for a first round of discovery (with attendant cost and delay) to ferret out facts which Missouri Rule 55.05(1) requires to be pleaded. We also note that even the federal system has pulled back from some of *Conley*'s liberality. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561–63, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)(abrogating *Conley* in part).

## Count II—Declaratory Judgment

Count II seeks a declaratory judgment per § 536.150, despite our supreme court's 1995 prescience that "applicability of the MAPA to colleges and universities may now be a moot point because the general assembly has enacted § 536.018, RSMo 1994, which states that the term 'agency' does not include an institution of higher education that has otherwise established constitutionally adequate safeguards." *State ex rel. Yarber v. McHenry*, 915 S.W.2d 325, 330 n. 3 (Mo. banc 1995).[5] *See also Edoho v. Bd. of Curators of Lincoln Univ.*, 344 S.W.3d 794, 798 (Mo.App.2011); *Kixmiller v. Bd. of Curators of Lincoln Univ.*, 341 S.W.3d 711, 715 (Mo.App.2011). Such institutions seem to be "out from under the MAPA for all purposes and all cases...." Alfred S. Neely IV, 20 Missouri Practice, *Administrative Practice and Procedure* § 3.1, p. 81 (2006).

■ As in *Kixmiller*, 341 S.W.3d at 715, Plaintiff's petition fairly read "avers that the University's rules and regulations represented to employees that reasons would be provided and a hearing would be allowed before termination implying a self-imposed prohibition against terminating an employee unfairly and a promise not to terminate without providing some procedural due process." Given these allegations, by parity of reasoning with sovereign immunity, it seems that Plaintiff should further allege why or how a MAPA claim lies against MSU. We need not develop our views on this, however, since even if the MAPA did apply, circuit court

review thereunder does not include the power of equity or of declaratory judgment. *Anderson v. Div. of Child Support Enforcement*, 995 S.W.2d 546, 549 (Mo. App.1999).[6]

## Conclusion

Given our disposition on Rule 55.27(a)(6) grounds, we need not reach any Rule 55.27(a)(9) issues or arguments. The judgment of dismissal is affirmed.

ROBERT S. BARNEY, J., concur.

NANCY STEFFEN RAHMEYER, J., dissents in separate opinion.

NANCY STEFFEN RAHMEYER, J., dissenting.

I respectfully disagree with the majority opinion that Plaintiff did not plead a cause of action.

The standard of review for the granting of a motion to dismiss is *de novo*. *Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 464 (Mo. banc 2001). Where a trial court fails to state a basis for its dismissal, the appeals court will presume that the dismissal is based on the grounds stated in the motion to dismiss. *Shaver v. Shaver*, 913 S.W.2d 443, 444 (Mo.App. E.D.1996). The appeals court will affirm the dismissal if it can be granted on any grounds supported by the motion to dismiss. *McBride v. McBride*, 288 S.W.3d 748, 750–51 (Mo. App. S.D.2009).

A motion to dismiss for failure to state a cause of action is solely a test of the

---

5. Unchanged since 1994, § 536.018 states:
The term "agency" and the term "state agency" as defined by section 536.010 shall not include an institution of higher education, supported in whole or in part from state funds, if such institution has established written procedures to assure that constitutionally required due process safeguards exist and apply to a proceeding that

would otherwise constitute a "contested case" as defined in section 536.010.

6. *Anderson* cited *Dino v. State Bd. of Pharmacy*, 909 S.W.2d 755, 757–58 (Mo.App.1995), which was overruled on other grounds in *Bird v. Missouri Bd. of Architects, Prof'l Engineers, Prof'l Land Surveyors & Landscape Architects*, 259 S.W.3d 516, 521 n. 9 (Mo. banc 2008).

adequacy of the plaintiff's petition. [The court] assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.

*Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 306 (Mo. banc 1993) (internal citations omitted). A petition cannot be dismissed for failure to state a claim if it asserts any facts which, if proved, would entitle the plaintiff to relief. *Duggan v. Pulitzer Pub. Co.*, 913 S.W.2d 807, 810 (Mo.App. E.D.1995).

Plaintiff's first count in Jennings II, as noted herein, was for a breach of the implied covenant of good faith and fair dealing. MSU argues that to be able to recover for that breach, there must be a contract and that Plaintiff never claimed there was a contract. Her petition sets forth the additional factual allegations that have a bearing on whether she stated a claim:

> 2. Missouri State University ("MSU"), formerly known as Southwest Missouri State University, is an institution of higher education created pursuant to §§ 174.020 to 174.500 (RSMo.

2004) located in Springfield, Greene County, Missouri.

> . . . .

> 8. At all times relevant to this petition, [Plaintiff] was offered and accepted employment as associate professor of social work with tenure.

Thus, taking Plaintiff's averments as true and liberally granting her all reasonable inferences, we note Plaintiff pled that she was employed as an associate professor with tenure. Given the liberal inferences, as we must, Plaintiff claims she has an employment contract with MSU by virtue of her tenured status as an associate professor; she further claims that because of that status, employer MSU promised to expressly and impliedly follow the Faculty Handbook.[1] She claims this contract includes a promise to act in good faith. Plaintiff claims MSU did not act in good faith when it reassigned her and that she was damaged in the reassignment. All of the questions posited by the majority opinion are more aptly the discussion on a motion for a more definite statement or will be flushed out in discovery. On the basis of the petition, we cannot ascertain that there was no contract.[2] As such, I would find Plaintiff has adequately pled a claim that MSU breached the implied covenant of good faith and fair dealing in her contract.

The alternative ground in the motion to dismiss was abatement. Abatement of a

---

**1.** *See Snowden v. Northwest Missouri State University*, 624 S.W.2d 161, 163–64 (Mo.App. W.D.1981) (where teacher sued for wrongful termination based on provisions in Faculty Handbook), and *Grantham v. Rockhurst University*, 563 S.W.2d 147, 151–52 (Mo.App. K.C.D.1978) (where teacher sued for non-renewal of contract and the Faculty Handbook was used as guidance to the decision).

**2.** The majority opinion cites to *Missouri Consolidated Health Care Plan v. Community*

*Health Plan*, 81 S.W.3d 34, 46 (Mo.App. W.D. 2002), and *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 412 (Mo.App. W.D.2000). *Missouri Consolidated* involved a determination after the evidence was presented at a jury trial. *Missouri Consolidated*, 81 S.W.3d at 37–38. *Koger* granted a motion for summary judgment after evidence was presented to a special master. *Koger*, 28 S.W.3d at 408–09. Neither involved a motion to dismiss based on the pleadings.

second action is appropriate when a subsequent suit is instigated by the plaintiff in a previous suit; however, the second action must involve the same subject matter. *State ex rel. J.E. Dunn, Jr. & Associates, Inc. v. Schoenlaub,* 668 S.W.2d 72, 74 (Mo. banc 1984). The principles involved in abatement are "intended to manage the potential conflicts and inefficiency that can occur when more than one court has jurisdiction of the same subject matter." *Kelly v. Kelly,* 245 S.W.3d 308, 313 (Mo.App. W.D.2008). Abatement technically does not apply unless the issues are the same. *Id.* at 314. Plaintiff contends that the cause of action for a violation of the MHRA is not the same as an action for a breach of the implied covenant of good faith and fair dealing contained within a contract or for a claim for an injunction against her employer. She is correct. Although Jennings I and Jennings II involve the same parties, the subject matter is not the same.

The MHRA, section 213.070,[3] states that it is "an unlawful discriminatory practice" to "retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint ... pursuant to this chapter[.]"

> To prevail on a claim for hostile work environment, a plaintiff must prove: (1) he is a member of a protected group; (2) he was subjected to unwelcome [protected group] harassment; (3) his [membership in a protected group] was a contributing factor in the harassment; (4) a term, condition, or privilege of his employment was affected by the harassment; and (5) the [employer] knew or should have known of the harassment and failed to take appropriate action.

*Alhalabi v. Missouri Dept. of Natural Resources,* 300 S.W.3d 518, 527 (Mo.App.

E.D.2009). Plaintiff pled each of these allegations in Jennings I.

On the other hand, a claim for a breach of the implied covenant of good faith and fair dealing requires that there be a contract. "As a general statement, a covenant of good faith and fair dealing is present in every contract." *Bishop v. Shelter Mut. Ins. Co.,* 129 S.W.3d 500, 505 (Mo.App. S.D.2004). "If such a term is not expressed in the contract, then it will be implied." *Id.* Good faith is "an obligation imposed by law to prevent opportunistic behavior, that is, the exploitation of changing economic conditions to ensure gains in excess of those reasonably expected at the time of contracting." *Schell v. LifeMark Hospitals of Missouri,* 92 S.W.3d 222, 230 (Mo.App. W.D.2002).

Clearly, the cause of action in Jennings I is not the same cause of action as in Jennings II. The biggest difference, of course, is that there is no contract requirement for a claim under the MHRA. It would certainly be possible to violate the MHRA without breaching a contract. Likewise, an employment contract could be violated for a myriad of reasons that did not violate the MHRA. There is no possibility of inconsistent judgments. In theory, MSU may have violated either the contract or the MHRA without violating the other.

In Count II, Plaintiff gives the specifics of her complaints concerning MSU's failure to follow the Faculty Handbook:

> 16. [MSU's] *Faculty Handbook,* provides, inter alia, "13.4.2.4 Reassignment—A faculty member can be removed from classroom teaching or reassigned to other University duties while the PPRP or APGP or PCTP process is proceeding if at least two of the following three administrators agree ...".

---

**3.** All references to statutes are to RSMo 2000, unless otherwise specified.

17. ... After her reassignment, she availed herself of [MSU's] grievances procedures in which her and [MSU's] legal rights, duties or privileges of specific parties were required by [MSU's] *Faculty Handbook* to be determined after hearing.

. . . .

19. Furthermore, [Plaintiff] was not afforded a completed hearing on her grievance that complied with [MSU's] *Faculty Handbook.* Despite a requirement that President Nietzel timely issue formal recommendations of the UHP's findings, he failed to do so.

The pleadings allege provisions where a faculty member can be removed from classroom teaching or reassigned. Plaintiff claims she was entitled to due process before she was reassigned but that she was reassigned without any of the processes being implemented. She pleads that she availed herself of the grievance procedures as required by the university but the decision was not in accord with the clear and unambiguous rules, therefore, the recommendations were unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involved an abuse of discretion. In its memorandum in support of its motion to dismiss, MSU merely claims, "Since the University's grievance procedure includes the required due process safeguards, the University cannot be considered an agency within the meaning of the MAPA, and Plaintiff has no possible right to relief under the MAPA." The majority accepts that reasoning. While all of this may be shown by evidence, it certainly cannot be "proven" by a motion to dismiss. Whether MSU is an "agency" that has established constitutionally adequate safeguards remains to be proven. Plaintiff adequately set forth claims in her petition for a cause of action for judicial review.

I believe the trial court erred in dismissing Jennings II for abatement or for failure to state a claim.